UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-CV-24325-AMC

MSP RECOVERY CLAIMS, SERIES LLC,

      Plaintiff,

vs.

CSAA INSURANCE EXCHANGE and CSAA
AFFINITY INSURANCE COMPANY,

      Defendants.

_____/

**<u>DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT</u>**

Plaintiff is a collection agency formed specifically to bring this type of lawsuit. Plaintiff asserts it is an assignee of claims that originally belonged to Medicare Advantage Organizations and other related entities, and that Defendants are liable for allegedly failing to make necessary primary payments to Plaintiff's assignors. Plaintiff's claims fail, however, because jurisdiction does not exist over Defendants, both of which are and have never been licensed in, written insurance in, had any policies in force in, or had any employees or offices in Florida. Alternatively, Plaintiff has inadequately pled a basis for imposing liability on Defendants, and its class action claims fail as a matter of law.

## ARGUMENT

### I.   THE COMPLAINT FAILS BASED ON LACK OF PERSONAL JURISDICTION.

The result of this Plaintiff group's shotgun litigation approach -- filing hundreds of lawsuits against the entire insurance industry in the hopes that some of their claims will stick -- is on full display in this case. Neither of the Defendants here is even or has ever been licensed to or written insurance in Florida, has ever had any insurance policies in force in Florida or has ever had any offices or employees in Florida. As a result, Plaintiff's Complaint fails for lack of personal jurisdiction.

Whether a "federal court has personal jurisdiction over a defendant involves a two-part inquiry. First, the Court must determine whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of Florida's long arm statute, which is codified at § 48.193, Fla. Stat. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). Second, the Court must determine whether sufficient minimum contacts exist to satisfy the due process requirements of the United States Constitution." *Moreno v. Carnival Corp.*, No. 1:19-CV-22900-JLK, 2020 WL 5524906, at *3 (S.D. Fla. Sept. 14, 2020). Florida's long-arm statute provides two bases for exercising personal jurisdiction over a non-resident defendant. Under §

1

48.193(1), Fla. Stat., specific jurisdiction derives from a Defendant's activities within the forum state. "By contrast, under Fla. Stat. § 48.193(2), general jurisdiction is conferred over the defendant if he or she engaged in substantial and not isolated activity within Florida, whether or not the claim arises from that activity." *Lapidus v. NCL America, LLC*, Case No. 12-cv-21183, 2013 WL 646185, at *3 (S.D. Fla. Feb. 14, 2013).

Plaintiff's Complaint conclusorily alleges the Court has personal jurisdiction over Defendants because they "(a) [have] contracted to insure a person, property, or risk located within this state at the time of contracting; and (b) operate[], conduct[], and carr[y] on a business venture in the state of Florida. A substantial number of the claims thus far identified by Plaintiffs arise from Defendants' conduct within this state." Compl., ¶ 27. Florida's long arm statute, Fla. Stat. § 48.193(1)(a)(4), provides that a person submits to the jurisdiction of Florida courts "for any cause of action arising from . . . [c]ontracting to insure a person, property, or risk located within this state at the time of contracting." Plaintiff bears the burden of alleging sufficient facts to bring this case under the Florida long-arm statute. *See, e.g., Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1132 (Fla. 3d DCA 2018); *Venetian*, 554 So. 2d at 502.

Under clause (4) of the long-arm statute, Plaintiff must plead a contract that each Defendant issued to a person, property or risk in Florida, the time of the contracting, and demonstrate that this cause of action arises from that contract. Plaintiff has not pled any of these required elements. Indeed, Plaintiff has not identified *any* insurance policy issued by either of the Defendants. Plaintiff's conclusory allegations are therefore insufficient to establish a basis for jurisdiction. *See, e.g.*, *Lapidus*, 2013 WL 646185, at *4 ("Plaintiff's assertion that the Excursion Entities 'are believed to have entered into a contract with NCL for the protection of NCL's passengers, whereby the Excursion Entities agreed to subject themselves to the laws and

jurisdiction of the State of Florida,' . . . is also insufficient to confer jurisdiction.  Plaintiff has neither pled that he is a party to the contract nor has he sufficiently alleged his third party beneficiary claim.").

Plaintiff also alleges that this Court has general jurisdiction over Defendants because "Defendants maintain sufficient minimum contacts with the State of Florida so as to not offend traditional notions of fair play and substantial justice."  Compl., ¶ 28.  For a claim of general jurisdiction, a plaintiff must demonstrate that the requirements of the long-arm statute and constitutional due process have been met.  General jurisdiction can only be asserted over those "defendant[s] who [are] engaged in substantial and not isolated activity within this state."  Fla. Stat. § 48.193(2).  A defendant must have "continuous and systematic" business contacts that are both "extensive and pervasive."  *Taylor v. Gutierrez*, 129 So. 3d 415, 419 (Fla. 3d DCA 2013).  Here, Plaintiff merely alleges: "Defendants maintain and carry on systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avail themselves of the benefits of this judicial district."  Compl., ¶ 28.  These bare allegations of general jurisdiction are insufficient to support jurisdiction.  *Woodruff-Sawyer & Co. v. Ghilotti*, 255 So. 3d 423, 429 (Fla. 3d DCA 2018) (noting complaint failed to "allege facts sufficient to show that Woodruff-Sawyer engaged in substantial and not isolated activity within Florida.").

Plaintiff's failure to allege sufficient facts to support jurisdiction is not surprising. Plaintiff cannot possibly allege such facts since neither Defendant is or has ever been licensed to write insurance in Florida, written insurance in Florida, or had any policies in force in or offices or employees in Florida.  *See, e.g., Virgin Health Corp. v. Virgin Enterprises Ltd.*, No. 08-22557-CIV, 2009 WL 10668149, at *3-44 (S.D. Fla. Feb. 12, 2009), *aff'd,* 393 Fed. App'x 623

(11th Cir. 2010) (dismissing case for lack of personal jurisdiction based on defendant's declarant's averments regarding lack of a business presence in Florida); *Turi v. Stacey*, No. 5:13-CV-248-OC-22PRL, 2015 WL 403228, at \*12-15 (M.D. Fla. Jan. 28, 2015), *aff'd,* 627 F. App'x 904 (11th Cir. 2015) (dismissing case for lack of personal jurisdiction where defendants lacked a business presence in Florida); *Erie Ins. Exch. v. Larose*, 202 So. 3d 148, 155 (Fla. 2d DCA 2016) (finding lack of personal jurisdiction over Pennsylvania insurer that was not licensed to write insurance in Florida).

For example, in *Larose* the court found personal jurisdiction did not exist over a non-Florida insurer that did not write insurance in Florida, stating:

> The fact that Erie's insured serendipitously permitted Larose, a Florida resident, to drive an insured vehicle in Florida is a unilateral act by the insured that cannot provide the minimum contacts necessary to support personal jurisdiction over Erie in Florida.

*Larose*, 202 So. 3d at 155 (emphasis court's).

In *Royal Acquisitions 001, LLC v. Ansur Am. Ins. Co.*, No. 14-20914-CIV, 2015 WL 1437689, at \*1 (S.D. Fla. Mar. 27, 2015), even though it was registered in Florida the insurer was not licensed to and did not write insurance in Florida. The court found personal jurisdiction lacking, stating, in language equally applicable here:

> Plaintiff . . . asserts that Defendant is subject to Florida jurisdiction because it "breach[ed] a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. Ann. § 48.193(1)(a)(7) (West 2014). However, a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute. It is not enough that a foreign defendant merely contract with a Florida resident, or that performance under the contract could have been made in Florida; rather, the contract itself must *require* performance in Florida in order to invoke Florida jurisdiction. . . . Plaintiff claims only that Defendant's alleged failure to pay Plaintiff constitutes an act that confers jurisdiction under Florida's Long–Arm Statute. However, "[i]t is well-settled that a failure to pay money in Florida, without

4

> more, is insufficient to satisfy the constitutional due process minimum contacts requirement." *Banco Continental, S.A. v. Transcom Bank (Barbados), Ltd.,* 922 So. 2d 395, 399 (Fla. 3d DCA 2006) (citing *Venetian Salami Co.,* 554 So.2d 499, 501 (Fla.1989)).  Defendant's failure to pay Plaintiff's insurance claim is insufficient to establish specific jurisdiction.

*Royal Acquisitions*, 2015 WL 1437689, at *3 (citations omitted).  The court further stated:

> Plaintiff also claims that general jurisdiction exists over nonresident Defendant.  A defendant does not confer general jurisdiction on the courts of Florida by occasionally soliciting business there. . . .  Plaintiff places emphasis on the fact that Defendant is registered to do business in Florida coupled with the facts iterated above.  In Florida, general jurisdiction exists over a nonresident defendant that "is engaged in substantial and not isolated activity within this state."  Fla. Stat. Ann. § 48.193(2) (West 2014).  Although earlier court decisions concluded that a defendant's registration to do business in Florida, in and of itself, is enough to find personal jurisdiction over that defendant, those decisions did "not take into account the minimum contacts requirement of due process."

*Id.,* at *4 (citations omitted).  The court concluded that "due process requirements are not satisfied, as Defendant's contacts with this forum are insufficient to confer personal jurisdiction to a Florida court." *Id.,* at *5.[1]

These general principles have been specifically applied in a substantively similar case involving this Plaintiff group.  *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, No. 217CV02522CASPLAX, 2018 WL 5086623, at *7 (C.D. Cal. Aug. 13, 2018).  There, three of the defendants had their principal places of business and issued insurance policies in states other than California.  Defendants also submitted declarations averring that they did not write or issue policies in California.  The court agreed that it lacked personal jurisdiction over these defendants,

---

[1] *See also Brown v. Atl. Cas. Ins. Co.*, No. CV98-0415999S, 1998 WL 811368, at *1 (Conn. Super. Ct. Nov. 13, 1998) (holding that jurisdiction did not exist where, as here, the insurer was not licensed in the forum state and did not write insurance policies in the forum state); *Zimmerman v. Am. Inter-Ins. Exch.*, 386 N.W.2d 825, 827 (Minn. Ct. App. 1986) (same principle); *Am. Indep. Ins. v. Heights Chiropractic Care, P.C.*, 12 Misc. 3d 228, 230, 811 N.Y.S.2d 904, 906 (Sup. Ct. 2006) (same principle).

stating:  "Plaintiffs cite no authority for the proposition that a court may exercise personal jurisdiction over a defendant having no relevant forum contacts merely because jurisdiction is proper over its co-defendants and the claims involve a common nucleus of operative facts. Accordingly, plaintiffs may not rely on pendent personal jurisdiction.  Because plaintiffs fail to allege facts sufficient to exercise personal jurisdiction over these defendants, the Court dismisses all claims against [these defendants]."  *Id.,* at *8.

Applying the above principles here, jurisdiction simply does not exist over Defendants. Neither of the Defendants in this case is or has ever been licensed to write insurance in Florida. *See* Declaration of Joey Daryanani, Exhibit A hereto, ¶ 4.  Moreover, neither of the Defendants writes or has ever written insurance in Florida, has or ever has had any insurance policies in force in Florida, or has or ever has had any offices or employees in Florida.  *Id.*  For all these reasons, Plaintiff's Complaint should be dismissed because personal jurisdiction does not exist over either Defendant.

## II.  ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED BASED ON LACK OF SUFFICIENT ALLEGATIONS DEMONSTRATING DEFENDANTS' RESPONSIBILITY TO PAY.

Plaintiff's two causes of action are based on the MSP Act and its implementing regulations.  Both counts therefore require pleading of a legitimate basis for Defendants' payment responsibility.  The MSP Act provides a "primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service *if it is demonstrated that such primary plan has or had a responsibility to make payment* with respect to such item or service."  42 U.S.C. § 1395y(2)(B)(ii) (emphasis added).  The duty to reimburse, then, arises only if it is demonstrated that the primary plan had responsibility to make payment.  Indeed, the Eleventh Circuit specifically so held in *MSP Recovery v. Allstate Insurance Co.*, 835 F.3d 1351,

1361 (11th Cir. 2016), stating "a contractual obligation may serve as sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under the MSP Act. This does not relieve Plaintiff of its burden to allege in their complaints, and then subsequently prove with evidence, that Defendants' valid insurance contracts actually render Defendants responsible for primary payment of the expenses Plaintiff seeks to recover. And Defendants may still assert any valid contract defense in arguing against their liability. We hold only that a contractual obligation may satisfy the demonstrated responsibility requirement, not that the existence of a contractual obligation conclusively demonstrates liability under the MSP Act's private cause of action." *See also MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 771 (11th Cir. 2020) ("Until responsibility is 'demonstrated,' therefore, the 'obligation to reimburse Medicare does not exist' and it can't be said that the primary plan—as required by the private cause of action's language—'"failed" to provide appropriate reimbursement.' . . . Thus, § 1395y(b)(2)(B)(ii)'s demonstrated-responsibility requirement is a prerequisite to filing a private lawsuit under § 1395y(b)(3)(A)."); *Ocean Harbor Cas. Ins. v. MSPA Claims, 1*, 261 So. 3d 637, 645 (Fla. 3d DCA 2018), *pet. for review denied* (Fla. S. Ct. Oct. 31, 2019) (same principle); *IDS Prop. Cas. Ins. Co. v. MSPA Claims 1, LLC,* 263 So. 3d 122, 124 (Fla. 3d DCA App. 2018) (same principle).

Here, Plaintiff's Complaint is devoid of any non-conclusory allegations demonstrating Defendants' responsibility to pay anything. The Complaint does not include any facts whatsoever related to any enrollee, the amount charged to Plaintiff's alleged assignors or amounts they supposedly paid, what exactly any such payments were for, what treatment was provided, what exactly was supposedly covered and not paid by Defendants, or what coverage determinations were made by Defendants. Plaintiff has simply attached as Exhibit A to its

Complaint a list of what purports to be claims that Defendants reported to CMS/Medicare. Compl. Exhibit A & ¶¶ 48-49.  But just because Defendants reported a claim to CMS does not demonstrate Defendants' responsibility to pay for any particular medical expense.  So, Plaintiff's Exhibit A, which is nothing more than a bare list of names, is patently insufficient to plead any responsibility by Defendants to pay any amount to Plaintiff.

As the above authorities show, to obtain reimbursement under the MSP Act Plaintiff would have to plead and ultimately show Defendants were in fact required to pay the medical charges at issue, and that these charges were covered in the first instance under the applicable insurance policies issued by Defendants.  Yet, there are many reasons Defendants may have no responsibility to pay, most notably because the subject charges were not reasonable, necessary or related to the relevant automobile accident.  *See, e.g., United Automobile Insurance Co. v. Millennium Diagnostic Imaging Center, Inc.,* 12 So. 3d 242, 245-46 (Fla. 3d DCA 2009).  And, as the above decisions show, it is not enough to merely parrot the words "reasonable, necessary and related."  Unless and until Plaintiff alleges facts showing Defendants actually had an obligation to pay the particular disputed bills, which they simply have not done, Plaintiff cannot assert a valid claim.

Similarly, with respect to Plaintiff's claims related to liability insurance the mere fact that a settlement was reached does not necessarily demonstrate Defendant's responsibility to pay for any and all medical expenses.  As one court explained in this context, in "the event that the government does elect to seek reimbursement, it is incumbent upon the government to show how much money it is entitled to from a settlement fund."  *Mackrides v. Marshalls*, No. 11-CV-6540, 2013 WL 1755216, *5 (E.D. Pa. Apr. 24, 2013) (citations omitted).

In connection with settlements, the responsibility of a liability insurer to reimburse Medicare is defined by the scope of the settlement and the Medicare beneficiary's claim against the third party with whom the settlement is reached.[2]  For example, in *Weinstein v. Sebelius,* No. CIV. A. 12-154, 2013 WL 1187052, *1 (E.D. Pa. Feb. 13, 2013), *report and recommendation adopted*, No. CIV. 12-154, 2013 WL 1187048 (E.D. Pa. Mar. 22, 2013), Weinstein settled a medical malpractice claim with a medical center, AEMC, to resolve a suit arising from the alleged wrongful death of her husband based on stroke-related complications.  The court explained that Medicare prevailed only because it had met its burden of establishing that, under the specific terms of the settlement at issue, its claim was valid.  *Id.  See also Salveson v. Sebelius*, No. CIV. 10-4045, 2012 WL 1665424, *7-8 (D.S.D. May 11, 2012) (disagreeing with Salveson's contention that the settlement could not have covered medical expenses relating to the first "non-negligent" surgery, holding Salveson's complaint against the doctors -- not the evidence produced in the case -- defined the scope of Medicare's right to reimbursement because she expressly released those claims in the parties' settlement, and further finding that "both the state and federal lawsuits are specifically incorporated into the Release . . . as defining the scope of the claims discharged.").  As these authorities show, the mere allegation that a settlement was reached does not sufficiently allege a defendant's responsibility to pay; rather, the specific settlement terms must be assessed in each and every case.

Here, the Complaint merely refers to "settlements" with unnamed Medicare beneficiaries, and alleges no legally significant facts whatsoever regarding any actual settlement.  Plaintiff's generic allegations do not address any of the following, which are necessary to properly state a claim:  (1) What was claimed and released as part of the settlements; (2) Were any and all claims

---

[2] *See, e.g., Hadden v. United States*, 661 F.3d 298, 302 (6th Cir. 2011); *Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.,* 760 F.3d 307, 315 (3d Cir. 2014).

related to the beneficiaries' purported accidents asserted and released; (3) Did the settlements include items for which an MAO made no conditional payment or which were unrelated to the accidents at issue in this lawsuit; or (4) Whether the settlements at issue arose from a court order on the merits of a case which may have allocated portions of the settlement to non-medical losses, in which event there could be no MSP Act recovery.[3]

*MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, 974 F.3d 1305, 1309 (11th Cir. 2020), *reh'g denied*, is not to the contrary.  Most importantly, *Ace* did not purport to change or overrule the Eleventh Circuit's prior holding in *MSP Recovery,* requiring insurers to plead and prove demonstrated responsibility.  Accordingly, *Ace* did not change the rule that a plaintiff needs to plead facts, not just bald conclusions, which is all that exists here in the form of Plaintiff's Exhibit A, that Defendants actually have an obligation to pay the bills in question.  Indeed, *Ace* said nothing about first-party coverage allegations.  As to third-party liability settlement allegations, while the *Ace* Court stated "Defendants' settlement agreements with beneficiaries show, at minimum, that Defendants had constructive knowledge that they owed the primary payments," *id.* at 1319 (citing *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 903 (11th Cir. 2003), this was pure dicta.  And *Baxter*, on which the *Ace* Court relied, dealt with constructive knowledge in an entirely different context - i.e., whether a tortfeasor can defeat a subrogation claim by the government by paying a third party when it knew or should have known of the government's subrogation rights.  *Baxter,* 345 F.3d at 902.  That is obviously not the situation here.

The *Baxter* Court stated:

---

[3] *See, e.g., Bradley v. Sebelius,* 621 F.3d 1330, 1335-38 (11th Cir. 2010); *In the Case of Estate of M.S.W.*, Docket Number: M-10-1528, 2010 WL 7209446, *2 (H.H.S. Nov. 8, 2010).

> In light of the well-established common law of subrogation, consistent with the purposes of the MSP statute, and following the D.C. Circuit, we hold that either knowledge or constructive knowledge is sufficient. *Thus, if the RSP Defendants had either knowledge or constructive **knowledge that some of the recipients of the funds they were paying out had received breast implant-related medical treatment for which Medicare already paid**,* then the RSP Defendants would be liable to reimburse the Government pursuant to § 1395y(b)(2)(B)(iii).
>
> We need not at this early stage of the litigation attempt to define the precise scope of the constructive knowledge that will trigger liability, because we conclude that the Government's allegations in that regard survive Rule 12(b)(6). The Government has alleged that the RSP Defendants structured the settlement in a manner so as to avoid learning any identifying information about the class members, including their Medicare eligibility. A party that willfully blinds itself to a fact, as the Complaint here alleges occurred, can be charged with constructive knowledge of that fact.

*Id.* at 901-02 (footnotes omitted, emphasis added).

As the above-quoted language indicates, it is not merely an allegation of the existence of a settlement with a Medicare beneficiary that allows an MSP Act claim to proceed, but instead knowledge of the existence of a conditional Medicare payment must be alleged and proven. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016), also supports this construction.  There, the Court explained:

> Western argues that it did not fail to provide for payment or appropriate reimbursement because Western (1) lacked constructive knowledge that Medicare made a payment; and (2) attempted to make Humana a payee on the settlement check but was ordered instead to pay $19,155.41 into trust pending resolution of a dispute regarding the amount of Humana's entitlement. As the district court noted, Western's second argument forecloses its first. ***Western's attempt to list Humana as a payee on the settlement check indicates that Western knew of Humana's lien.*** Western seeks to evade this conclusion by asserting its ignorance of Humana's status as an MAO. We see no value in this distinction. Western had actual knowledge of Humana's claim, and as a settling party in tort litigation, Western had the ability to discern the precise nature of Ms. Reale's health insurance coverage. . . . *cf.*

*United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 901 (11th Cir. 2003) ("[W]hen the primary insurer later pays, Medicare's prior payment will normally be a matter of ascertainable fact."). **Western therefore had constructive knowledge of Humana's Medicare payment.**

(Emphasis added.)  As *Humana* further demonstrates, the required pleading factor is not mere constructive knowledge of a settlement with a Medicare beneficiary, but constructive knowledge of the actual conditional payment by the MAO, which is simply not pled here.

Indeed, in its amicus brief in *Ace,* the government argued, quoting *Baxter,* that "[c]onstructive knowledge is established when a defendant 'has in its possession information necessary to draw the conclusion that Medicare has made such a payment' or 'willfully blinds itself' to such information."  *Ace,* Amicus Brief of United States, filed June 8, 2020, p. 18 n. 4 (copy attached as Exhibit B).  So, the government's own view is that a settlement with a Medicare beneficiary alone is insufficient -- rather, the defendant must actually know of a conditional Medicare payment.  Just as the existence of a settlement alone is not enough to establish constructive knowledge, it is also insufficient to demonstrate an insurer's responsibility to make primary payments.

Plaintiff obviously realizes *Ace* did not eliminate the need to plead facts showing demonstrated responsibility, because it expressly, but unsuccessfully, attempts to plead around the issue.  First, Plaintiff erroneously alleges that once an MAO makes a payment for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services were reasonable and necessary (which therefore supposedly demonstrates that Defendants would be obligated to pay for such items and services).  (Compl., ¶ 55.)  However, this legal conclusion is directly contrary to the controlling Eleventh Circuit law, set forth in *MSP Recovery,* holding MSP Act plaintiffs must plead and prove that defendants' insurance contracts actually render them responsible for primary payment of the subject expenses.  If evidence of a

conditional payment by a purported secondary payer, which Plaintiff has not pled in any event, were "conclusive proof" that a defendant insurer was responsible for paying the items and services at issue, the Eleventh Circuit could not have held, as it did in *MSP Recovery,* that plaintiffs asserting primary payer responsibility must still plead and prove that the defendants' insurance contracts in fact provided coverage for the subject expenses.  In addition, Plaintiff's "conclusive proof" allegation is refuted by federal Court of Appeals and district court decisions holding that even if Medicare has made a payment a primary insurer is not required to pay beyond what its policy or state law requires (*e.g.,* for unrelated, unreasonable or unnecessary medical expenses).  *See Caldera v. Ins. Co. of the State of Pa.,* 716 F.3d 861, 864-66 (5th Cir. 2013); *California Ins. Guarantee Ass'n v. Burwell,* 227 F. Supp. 3d 1101, 1113-14 (C.D. Cal. 2017); *California Ins. Guarantee Ass'n v. Price,* 252 F. Supp. 3d 948, 956-57 (C.D. Cal. 2017). Indeed, citing *Caldera,* the *Ocean* court flatly rejected the argument that an MAO is entitled to "automatic" reimbursement under the MSP Act.  Rather, *Ocean* expressly held the MAO must plead facts demonstrating, and then establish with proof, that it is entitled to recover no-fault benefits under the relevant state law.  *Ocean*, 261 So. 3d at 645-46.

In another attempt to get around its burden to plead and prove Defendants' responsibility to pay, Plaintiff has argued Defendants failed to administratively appeal the MAOs' rights to reimbursement and therefore are time-barred from challenging the propriety of the amounts paid. (Compl., ¶ 82.)  Again, this legal conclusion is unfounded.  Nothing in the relevant statute or regulations supports Plaintiff's position.   To the contrary, Medicare enacted a regulation allowing for appeals by certain applicable plans, including no-fault and liability insurers, in connection with reimbursement demands by Medicare where Medicare pays secondary to those plans, *but specifically declined to extend that appeal process to MAO reimbursement claims.  See*

Medicare Program; Right of Appeal for Medicare Secondary Payer Determinations Relating to Liability Insurance (Including Self-Insurance), No-Fault Insurance, and Workers' Compensation Laws and Plans, 80 Fed. Reg. 10611, 10616 (Feb. 27, 2015).   And the *Ocean* court also specifically rejected this Plaintiff group's "administrative appeals" argument.  *Ocean,* 261 So. 3d at 647 ("[W]e see nothing in these regulations whereby a primary plan like Ocean Harbor could administratively contest a determination by MSPA that Ocean Harbor was responsible to make a particular payment.  The cases cited by MSPA in support of its argument are inapposite.  They concern the requirement that a Medicare enrollee exhaust administrative remedies before suing Medicare in federal court.  None of those cases stand for the proposition that a primary plan had to exhaust administrative remedies before defending a claim that it was the responsible primary plan for a medical bill.") (footnote omitted).

## III.   IN ALL EVENTS, PLAINTIFF'S CLASS ALLEGATIONS FAIL AS A MATTER OF LAW.

For the foregoing reasons, Plaintiff's entire Complaint should be dismissed.  But, in the alternative, Plaintiff's class action allegations should be dismissed because, as a matter of law, there can be no predominating common questions of law or fact, so Plaintiff cannot certify a class.   Notably, the Florida Court of Appeal reversed class certification in the substantively identical *Ocean* case (adopted by the *IDS* court), rejecting, as a matter of law, the notion that this type of case can be brought as a class action.

In so holding, *Ocean* specifically rejected the theories Plaintiff asserts here to try to avoid the individualized liability inquiries that will necessarily predominate -- that a plaintiff seeking to recover under the Medicare Secondary Payer laws is entitled to "automatic" reimbursement, and that a defendant insurer waives the right to challenge a plaintiff's reimbursement rights if it does not exhaust administrative appeals.  *Ocean*, 261 So. 3d at 645-46.  Rather, and as demonstrated

14

above, a plaintiff in these types of cases must allege in its complaint, and subsequently prove with evidence, that its insurance contract in fact renders the insurer responsible for primary payment of the expenses a plaintiff seeks to recover, and defendants may assert any and all payment defenses they have. *Id.* As a result, class treatment here is not viable as a matter of law because of all the predominating individualized issues that will need to be dealt with in order for Plaintiff to demonstrate Defendants' responsibility with respect to each and every disputed medical transaction. *See also MSP Recovery Claims, Series LLC v. Plymouth Rock Assurance Corp.*, No. 1:18-CV-11702-ADB, 2019 WL 6791962, at *5 (D. Mass. Dec. 12, 2019) (dismissing class allegations in yet another case brought by this Plaintiff group, because there would have to be an individualized review of each claim to determine whether the defendant insurer had any responsibility to pay anything).

Courts can and should dismiss legally deficient class action allegations at the pleadings stage. *See, e.g., Saunders v. BellSouth Advert. & Pub. Corp.,* No. 98-1885-CIV, 1998 WL 1051961, *1 (S.D. Fla. Nov. 10, 1998) (granting motion to dismiss class action allegations, and rejecting argument that doing so was procedurally improper); *Vandenbrink v. State Farm Mut. Auto. Ins. Co.,* No. 8:12-CV-897-T-30TBM, 2012 WL 3156596, *3 (M.D. Fla. Aug. 3, 2012) (same principle). *Accord Hill v. Wells Fargo Bank, N.A.,* 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013); *Bearden v. Honeywell Int'l, Inc.,* No. 3:09-01035, 2010 WL 1223936, *9 & n. 13 (M.D. Tenn. Mar. 24, 2010). To survive this type of motion to dismiss, a plaintiff must plead facts sufficient to demonstrate that all the prerequisites of Fed. R. Civ. P. 23(a) and (b) are met. And courts routinely dismiss class action allegations where, as here, a complaint fails to plead the minimum facts necessary to satisfy these class action prerequisites. *See, e.g., Saunders,* 1998 WL 1051961, *2; *Vandenbrink,* 2012 WL 3156596, *3; *Alaska Airlines, Inc. v. Carey,* No. 07-5711, 2008 WL 2725796, *6 (W.D. Wash. July 11, 2008), *aff'd,* 395 Fed. App'x 476 (9th Cir.

2010); *Lumpkin v. E.I. Du Pont de Nemours & Co.*, 161 F.R.D. 480, 481-82 (M.D. Ga. 1995); *Advanced Acupuncture Clinic, et al. v. Allstate Insurance Company, et al.*, No. 07-4925, 2008 WL 4056244, *15 (D.N.J. August 26, 2008), *aff'd on other grounds,* 2009 WL 2171221 (3d Cir. July 22, 2009).

Where individualized issues necessarily predominate over common ones, a case cannot, as a matter of law, proceed as a class action under Rule 23(b)(3).  For example, in *Saunders*, the court dismissed the class allegations because, as here, the "individualized factual inquiries predominate over any class-wide issues," and therefore "the Plaintiffs' class allegations fail under Rule 23(b)(3) as a matter of law."  *Saunders*, 1998 WL 1051961, *2.

In *Vandenbrink,* the court dismissed the class allegations because, again as here, individualized issues predominated as a matter of law:  "the threshold inquiry is whether the Plaintiffs were made whole through their settlements.  If this case were to proceed, the most important issues to settle will be individual in nature.  The issues will include the damages incurred by an individual plaintiff, the amount of the settlement, and the portion of the settlement that actually was for medical payments.  Since the individual factual inquiry will predominate this litigation, making any sort of class litigation highly impractical, the class allegations will be stricken."  *Vandenbrink*, 2012 WL 3156596, *3.

Applying the above principles here, Plaintiff's class action allegations should be dismissed because these allegations cannot, as a matter of law, satisfy the predominance of common issues class action prerequisite.  Plaintiff's liability theory is that Defendants allegedly failed to reimburse Plaintiff and the putative class the full amount supposedly due for "conditional payments" they purportedly made as secondary payers.  This requires numerous individualized determinations for each and every putative class member with respect to the

reasonableness, necessity and accident-relatedness of each and every one of the applicable medical transactions.

Significantly, courts have often found class action treatment inappropriate on the ground that issues related to the reasonableness and necessity of medical expenses are inherently individualized.  Indeed, that is what led the *Ocean* court to reject class action treatment in this very context, stating, in language equally applicable here: "Proof that certain medical bills paid by MSPA's alleged assignor should have been paid by Ocean Harbor as a primary payer will not establish that other medical bills paid by a different MAO should also have been paid by Ocean Harbor as a primary payer.  To the contrary, proof to establish liability will necessarily devolve into a series of mini-trials . . . which precludes a finding of predominance and renders this case inappropriate for class action treatment."  261 So. 3d at 639 (citation omitted).  *See also DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 271 F.R.D. 676, 683-84 (S.D. Fla. 2010), *aff'd*, 469 Fed. App'x 762 (11th Cir. 2012) (class action treatment inappropriate where, among other things, each putative class member would have to establish that treatment was medically necessary and the charge therefor was reasonable); *Premier Open MRI v. Allstate Ins. Co.*, No. 16-2003-CA-004498, 2005 WL 6058681, *1 (Cir. Ct. Duval Cty. Fla. Jan. 7, 2005) (same).  Indeed, there is a consistent body of law throughout the country holding to this effect.  *See e.g., Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 779 (8th Cir. 2013); *Advanced Acupuncture*, 2008 WL 4056244, *13; *Gloria v. Allstate County Mutual Insurance Company*, C/A SA-99-CA-676-PM, 2000 WL 35754563, *9 (W.D. Tex. Sept. 29, 2000); *Ross-Randolph v. Allstate Ins. Co.*, No. DKC-99-3344, 2001 WL 36042162, *6 (D. Md. May 11, 2001); *Johnson v. GEICO Cas. Co.*, 310 F.R.D. 246, 255 (D. Del. 2015), *aff'd*, No. 16-1132, 2016 WL 6958431 (3d Cir. Nov. 29, 2016); *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 531 (D. Md. 2001).

The same types of issues which, again, are apparent from the face of Plaintiff's Complaint, also preclude class action treatment here as a matter of law. For each and every putative class member, each and every medical bill, and each and every line item for which Defendants supposedly owe primary payments, there would have to be a separate mini-trial to determine whether the charge was reasonable and whether the treatment allegedly provided to Defendants' insured was necessary and related to the subject automobile accident. And Plaintiff's claims related to third-party liability insurance raise even more predominating individualized issues. As demonstrated above, highly case specific questions such as the following would have to be addressed for each putative class member: (1) What was claimed and released as part of the settlements? (2) Were any and all claims related to the beneficiaries' purported accidents asserted and released? (3) Did the settlements include items for which an MAO made payment?

As also shown above, Plaintiff cannot circumvent these predominating individualized issues with its "conclusive proof" and "administrative appeals" theories, which fail for all the reasons discussed above at pp. 12-14. In all events, Plaintiff alleges only that an MAO's payment is conclusive proof of reasonableness and necessity, *not* of the relatedness of the expenses to the insured's accident. So, there would in all events be predominating individualized issues concerning whether each and every disputed medical transaction was related to the insured's relevant automobile accident: *i.e.,* (1) What health conditions did the claimant/beneficiary suffer; (2) Was the expense at issue for treatment for an injury or condition wholly unrelated to the accident -- *e.g.,* cancer, arthritis, a prior surgery that had nothing to do with the insured's accident; and (3) Was the charge at issue one for which an MAO made a conditional payment in connection with an accident.

18

The above examples of the individualized issues that will have to be determined to resolve this case demonstrate that no class can be certified here because, as a matter of law, common issues will not predominate.  And the fact that Plaintiff purports to represent a nationwide class makes class treatment even more legally untenable.  *See, e.g., Marino v. Home Depot U.S.A., Inc.,* 245 F.R.D. 729, 735 (S.D. Fla. 2007) ("Florida contract law cannot apply to every potential class member on a nationwide basis. . . . [The] contracts were negotiated and entered into entirely in different states, each with its own law of contracts."); *Clausnitzer v. Fed. Exp. Corp.*, 248 F.R.D. 647, 654 (S.D. Fla. 2008) (same principle); *Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV, 2014 WL 815253, at *11 (S.D. Fla. Mar. 3, 2014), *aff'd,* 621 Fed. App'x 945 (11th Cir. 2015) (same); *McBride v. Galaxy Carpet Mills, Inc.*, 920 F. Supp. 1278, 1286 (N.D. Ga. 1995) (same).

Because "an MSP claimant may not recover amounts from a purported 'primary plan' in excess of a carrier's responsibility under state law or the relevant contract," *Caldera,* 716 F.3d at 865, the putative class claims here would necessarily be governed by all the states' varying no-fault laws and insurance provisions.  Notably, courts have rejected nationwide class treatment in similar contexts for this very reason.  *See, e.g., Innovative Physical Therapy, Inc. v. Metlife Auto & Home*, No. CIV A 07-5446 (JAP), 2008 WL 4067316, at *10 (D.N.J. Aug. 26, 2008), *aff'd on other grounds sub nom. St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*, 342 F. App'x 809 (3d Cir. 2009) (stating "PIP insurance coverage differs between states and are governed by statute," and holding such differences result in predominating individualized issues that preclude class treatment); *Advanced Acupuncture*, 2008 WL 4056244, at *11 (same; holding need to apply fifty different state PIP laws rendered the class action unmanageable as a matter of law).

*MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, No. 19-21583-CIV, 2020 WL 5984382, at *15 (S.D. Fla. May 12, 2020), *report and recommendation adopted,* No. 19-21583-CIV, 2020 WL 5982020 (S.D. Fla. Oct. 8, 2020), and other similar cases, where some courts have denied these sorts of motions because, in their view, the better course is to defer ruling on class issues until after class discovery, are not persuasive.  Defendants respectfully submit that no amount of discovery will obviate the highly case-specific issues discussed above which exist as a matter of law and preclude class certification.  As a result, it makes no sense for the Court or the parties to expend the time and resources on full-blown, *in terrorem* class certification proceedings, including the costly discovery this Plaintiff group typically seeks in these cases, when none of that discovery can ever support class certification.  *See, e.g., Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019) (referring to the "in terrorem character of a class action" because of the substantial costs and consequent pressure to settle even meritless claims caused to defendants thereby); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 678 (7th Cir. 2009) (same principle).

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request this Court to enter an order dismissing this action in its entirety or, alternatively, dismissing the class action allegations.

Respectfully submitted,

GUNSTER
600 Brickell Avenue, Suite 3500
Miami, Florida  33131
Telephone:  305-376-6000
Facsimile:  305-376-6010
acortinas@gunster.com

By:  /s/ Angel A. Cortiñas
      Angel A. Cortiñas

20

DENTONS US LLP
Steven M. Levy (*pro hac vice*)
steven.levy@dentons.com
Mark L. Hanover  (*pro hac vice*)
mark.hanover@dentons.com
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone: 312-876-8000
Facsimile: 312-876-7934

*Co-counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2020, the foregoing was filed using the Court's

CM/ECF system and served via email or transmission of Notices of Electronic Filing generated

by CM/ECF to all counsel of record by the Court's CM/ECF system.


By:  /s/ Angel A. Cortiñas